(81 South. 828)

## BRILLIANT COAL CO. v. BARTON. (6 Div. 773.)

(Supreme Court of Alabama. Feb. 6, 1919. On Rehearing, April 17, 1919.)

1. JURY ⊂⊃58—SELECTION—STRUCK JURIES—FOLLOWING STATUTE.

The statutory mode of procedure in selection of special or struck juries must be strictly followed; the rule as to errors and irregularities in such case being more strict than in case of ordinary juries.

2. JURY ⊂⊃71—SELECTION—STRUCK JURY—IRREGULARITIES.

The presenting of all the jurors in attendance for the week, 28 in number, as the special panel for a struck jury in a civil case, instead of only 24, as provided by Code 1907, § 4635, defining procedure in civil cases, under Acts 1909, p. 318, § 32, constitutes reversible error.

3. EVIDENCE ⊂⊃20(1)—JUDICIAL KNOWLEDGE—MANAGEMENT OF BEASTS OF BURDEN.

In action involving question of whether the driving in a mine of a mule without reins was contributory negligence, the court knows as a matter of common knowledge that beasts of burden are governed and directed by the voices of the drivers even more than by bits and reins.

4. MASTER AND SERVANT ⊂⊃262(4)—INJURY TO COAL MINE EMPLOYÉ—PLEA—CONTRIBUTORY NEGLIGENCE OF DRIVER.

In action by driver of mule in coal mine for injuries from rocks from roof of mine, defendant's plea alleging that driver "holloed" at mule and did so knowing mule to be "vicious, unruly, or untrained," without showing that the direction was wrong, held insufficient allegation of negligence; "hollo" not importing address so rude as to drive animal to dangerous action.

5. APPEAL AND ERROR ⊂⊃1040(7)—REVIEW—HARMLESS ERROR.

Sustaining of demurrer to special plea was harmless, where its defensive scope was covered by another plea which went to the jury.

6. MASTER AND SERVANT ⊂⊃238(5)—DRIVING WITHOUT REINS AS CONTRIBUTORY NEGLIGENCE—CUSTOM.

Where coal mine operator delivered mule to driver without equipment of reins, the custom of driving without reins was not obviously dangerous, or voluntarily and unnecessarily practiced by driver.

7. MASTER AND SERVANT ⊂⊃274(9)—ACTION FOR INJURIES—EVIDENCE—DRIVER'S CONTRIBUTORY NEGLIGENCE—CUSTOM.

Where the issue was whether plaintiff was negligent in driving a mule without reins, testimony that he had driven the mule without reins on former occasions, and that it was the custom to do so, was admissible, where defendant mine operator had turned mule over to plaintiff without equipment of reins.

8. TRIAL ⊂⊃219 — INSTRUCTIONS — NEGLIGENCE.

Requested charges postulated on pleas which charged that plaintiff negligently committed certain acts knowing it was dangerous to do so, without defining what would constitute negligence in that regard, were properly refused.

## On Rehearing.

9. JURY ⊂⊃71—STRUCK JURIES—STRICTNESS OF PROCEDURE.

Jury Law Act, § 29, declaring that provisions of that act in relation to the striking, drawing, and summoning, or impaneling of jurors are to be held as directory, and not mandatory, does not apply to Code 1907, § 4635, providing for constitution of struck juries.

Appeal from Circuit Court, Walker County; J. J. Curtis, Judge.

Action by Mutie Barton against the Brilliant Coal Company for damages for injuries sustained from the fall of a rock while working in defendant's coal mine. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Counts 1, 2, and A are framed under subdivision 1, § 3910, Code 1907, and charge: (1) That the roof was defective; (2) that the rock which thus fell was loose and insecure, and should have been pulled down; and, in A, that the rock was insufficiently supported or improperly supported. Count D is framed under subdivision 2 of the statute, and counts upon the negligence of one Ed Clark, who in the exercise of superintendence negligently permitted the top or roof of the mine to be defective or improperly supported at or near the place where plaintiff was working. A number of special pleas, from 1 to 9 and 11 to 16, inclusive, set up the contributory negligence of the complainant in driving or managing a mule which he was working in the mines whereby the mule was driven or allowed to strike against the prop supporting the rock, and to thus knock it down and to allow the rock to fall. Plea 10 sets up contributory negligence in that plaintiff, knowing of the danger, negligently went under the loose rock. Plea 16 charges that the plaintiff negligently went under the rock knowing that the prop had been knocked under. The demurrers were sustained to pleas 6, 7, and 13, and the case was tried on the four counts above referred to, the general issue, and the several special pleas referred to.

The bill of exceptions recites: A struck jury was demanded by the plaintiff, and thereupon the court qualified all the members of the jury, being the full panel for the week, consisting of 28 men, and instructed the parties to strike from said full panel of 28. Thereupon the defendant objected to striking from the said full panel of the 28 jurors because not according to law, and moved the court that a list of 24 qualified jurors be furnished from which a jury to try the case should be selected, and objected to the jury to try the case being selected by the parties alternately striking from the

said full panel of 28 men. The court overruled the said motion and objection, and to such action of the court defendant then and there duly excepted, and the court required the parties to proceed to strike from the said full panel of 28 jurors. After two or three names had been stricken from the list by the respective parties, one of the jurors, to wit, Elisha Sanders, who was on the list as No. 14, and whose name had not been stricken by either party, made it known to the court that he was related to the plaintiff, and the court, finding that he was related to a disqualifying degree, had his name stricken from the list of jurors, thereby leaving 27 names on the list from which the jury was to be selected, being the full panel with the exception of the said Elisha Sanders. The defendant thereupon objected to the selection of the said jury from the remaining number of 27 names on the panel, on the ground that it would give the plaintiff one more strike than the defendant would have, and was not the legal manner of selecting the jury, and moved the court, on the same ground, to have made up a list of 24 qualified jurors from which the jury to try this case should be selected. The court separately and severally overruled the said objection and motion of defendant, and the defendant thereupon separately and severally excepted to each such action of the court immediately upon such action being taken. The parties to the cause then proceeded with the striking of the names from the list until the plaintiff had stricken eight names from said list and the defendant had stricken seven names, and the said cause was tried before and by the 12 men whose names were left on the said list of jurors.

Rulings on the evidence and requested instructions sufficiently appear from the opinion.

A. F. Fite, of Jasper, for appellant.

Coleman Shepherd and Ernest Lacey, both of Jasper, for appellee.

SOMERVILLE, J. Section 4635, Code 1907, provides for struck juries as follows:

"In all actions triable by jury, either party may demand a struck jury, and must thereupon be furnished by the sheriff with a list of twenty-four jurors in attendance upon the court, from which a jury must be obtained by the parties or their attorneys alternately striking one from the list until twelve are stricken off, the party demanding the jury commencing; and the jury thus obtained must not be challenged for any cause, except bias or interest as to the particular case."

The Jury Law of 1909 (Acts 1909, § 32, p. 318) preserves this right and procedure in civil cases.

The bill of exceptions shows that the mandate of the statute was violated, in that all the jurors in attendance for the week, 28, were presented as the special panel from which the parties were required to select a jury by alternate striking. By a plausible refinement of reasoning it might be contended that the error of excess in the number of the panel was not prejudicial to either party, since, after the first 2 jurors were stricken by each party, they thereafter proceeded regularly from the basis of 24, as provided by the statute.

In dealing with such rights as this, however, we are not permitted to speculate upon the possible or probable consequences of a violation of the law. To do so for the purpose of upholding the judgment rendered would be, in effect, to sanction the repeal of any provision of the statute by trial judges at their mere discretion, and might render the exercise of the right a dangerous snare instead of a valuable privilege. Nor does it matter that the party complaining of the error is not the party who demanded the struck jury; for, when the demand is made by either, each party has an equal right to procedure according to the law.

[1] "The rule as to errors and irregularities is more strict in the case of special or struck juries than in the case of ordinary juries. The established mode of procedure must be strictly followed, and the court cannot by any rule or practice vary the express provisions of the statute as to how the jury shall be selected." 24 Cyc. 258, 4.

[2] In order that the practice prescribed by the Legislature may be preserved, we deem it necessary that the judgment in this case be reversed for the erroneous practice here shown.

[3, 4] Plea 6 is manifestly bad. The only negligence specified is that plaintiff "holloed" at the mule he was driving loose in the mine, thereby causing the mule to turn near the prop and knock it down. According to Worcester's Dictionary, "hollo" is defined simply as a word used in calling. Certainly it does not import an address so rude as might be expected to shock the sensibilities of a mule, and so to drive him to disordered and dangerous action. We are bound to know, as a matter of common knowledge, that beasts of burden are governed and directed by the voice of their drivers even more than by bits and reins. The plea does not show that plaintiff gave the wrong direction to the mule, following which the catastrophe resulted, and hence there is nothing to support an inference of negligence.

Plea 13 is the same as plea 6, with the additional averment that plaintiff knew the mule to be "vicious, unruly, or untrained." The qualities alleged are in the alternative. The mere fact that plaintiff knew the mule was "vicious"—whatever that mulish quality may import—has no tendency to show that plaintiff's attempt to command him by speech was unadvised, or improper, or in

any way negligent. And assuming, as we may, that plaintiff's "hollo" was a command to the mule to do the right thing, in terms supposed to be intelligible to his mulish understanding, his disobedience to orders cannot be translated into negligence on the part of his driver.

We think the demurrers to these pleas were properly sustained.

[5] If the demurrer to plea 7 was improperly sustained, which we do not decide, the error was harmless, since its defensive scope was fully covered by plea 5, which went to the jury.

One of the issues in the case, as presented by one or more of defendant's special pleas, was whether plaintiff was guilty of contributory negligence in driving his mule on this occasion without the aid of reins. He was allowed to testify that he had so driven him on former occasions, and to show that it was the custom to do so in this mine and in other well-regulated mines.

The rule here applicable was stated in Warden v. L. & N. R. R. Co., 94 Ala. 277, 285, 10 South. 276, 280 (14 L. R. A. 552), as follows:

"Custom and usage may be relied upon to excuse the violation of a rule when the act involved is not negligent in itself, but only by relation to the rule violated; and so, when an act may be done in two or more ways, a resort to neither of which involves such obvious peril as raises the legal presumption or conclusion of negligence in the doing of it, a custom or usage to do it in a particular way may be looked to, as tending to show that it was not negligence to resort to that method in the instance under consideration. But custom can in no case impart the qualities of due care and prudence to an act which involves obvious peril, which is *voluntarily and unnecessarily done* [italics supplied], and which the law itself declares to be negligent."

[6, 7] Driving this mule without reins in this mine cannot be said to have been obviously dangerous; nor can it be said to have been voluntarily and unnecessarily practiced by plaintiff, in view of the undisputed evidence that the animal was delivered to him by defendant without the equipment of reins, which was in effect a command to drive without them. We think the testimony complained of was properly admitted.

Charge 2, given for plaintiff, does not assume that defendant's bank boss was negligent in fact, and was properly given.

As we read the evidence, it has no tendency to show that plaintiff was guilty of any negligence in his manner of driving the mule. On the contrary, it shows very plainly and conclusively that the prop was knocked down by the sudden and willful action of the mule in turning in the wrong direction. Hence all those charges requested by defendant on that theory of the case, as presented by special pleas, were properly refused.

[8] A number of charges refused to defendant were postulated on pleas which charged that plaintiff negligently went under the rock, knowing it was dangerous to do so, or knowing that the prop had been knocked out. These charges are faulty in predicating the result upon plaintiff's negligently going under the rock, etc., without any definition of what would constitute negligence in that regard, and were therefore properly refused. Ala. Cons. Co. v. Heald, 168 Ala. 648, 53 South. 162.

Several charges were refused to defendant which in effect asserted that the act of the mule in knocking down the prop was the efficient cause of plaintiff's injury, and not the defendant's manner of propping it.

If the jury should have found that the rock was so loosely propped that a chance blow such as this could knock down the prop, and that such a mischance might reasonably be expected to happen in the ordinary course of mining operations, then they could find that defendant was guilty of negligence, and that that negligence was the efficient proximate cause of plaintiff's injury, even though the event was immediately produced by the accidental contact of the mule. In short, the act of the mule may be considered as a co-operating cause, and not necessarily an independent self-operating cause which excluded defendant's negligence as a proximate causative agency. This was at least a question for the jury in this case.

For the error noted, let the judgment be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.

#### On Rehearing.

SOMERVILLE, J. [9] Section 29 of the Jury Law does unquestionably declare that the provisions of that act "in the relation to the selection, drawing, summoning or impaneling of jurors" are to be held as directory, and not mandatory. But this very clearly does not apply to section 4635 of the Code, which provides for the constitution of struck juries.

The contention of counsel that this court has never held an irregularity such as this to be reversible error overlooks the cases of B. U. St. Ry. Co. v. Ralph, 92 Ala. 273, 9 South. 222, and Smith v. Kaufman, 100 Ala. 408, 14 South. 111.

With respect to the nonapplication of rule of practice 45 to this case, it is not the policy of this court to apply that wholesome and useful rule in such a way as to nullify positive laws which can be upheld only by their compulsory observance.

This is not a case of mere irregularity in the mode of striking, but of a structural defect in the constitution of the panel it-

self. It is obviously of the highest importance that parties who demand a struck jury should have the assurance that they will get the jury promised them by the statute, and not one which the trial court or the appellate court may think is "just as good." Otherwise, as we have already observed, the exercise of the right would become an uncertain speculation.

For these reasons, which seem to us compelling, we adhere to our original ruling, and deny the application for rehearing.