665 So.2d 92 (1995)
STATE of Louisiana
v.
Alonzo L. HAYES.
No. 94 KA 2021.
Court of Appeal of Louisiana, First Circuit.
November 9, 1995.
Doug Moreau, District Attorney, Baton Rouge, by Brent Stockstill, Asst. District Attorney, for Appellee-State of Louisiana.
David Price, Baton Rouge, for Appellant Alonzo L. Hayes.
Before LOTTINGER, C.J., and GONZALES and FITZSIMMONS, JJ.
FITZSIMMONS, Judge.

FACTS
Two windows faced the parking lot. The lot was one story below John Taylor's law office. Noise of some sort attracted Mr. *93 Taylor to his windows; as the players took their positions on the board of the parking lot, John Taylor knew he would be a witness.
The two men had moved the pieces of the game toward a conclusion. Taylor had watched their moves from his perch above the board: the parking lot. Quickly, playing against the clock, the two men had managed to open the back glass of the 1993 Blazer. The Blazer had already been culled of one of its two back tires. Taylor had noticed its deformed appearance as he had entered the old two story home which was his office and that of his partner, Neal Wilkinson.
Taylor continued to survey the two men moving around the scarred car. One of them slithered through the inside of the car to the front seat. The other man moved to the front of the car. Taylor quietly watched as move after move tracked across the board below him. Deftly, the bonnet reached upward when released by the man inside. Now, Taylor's view of the two players below was shielded by the car's own body; yet, the arms and hands of the two men continued to fleck their way through the abdomen of the Blazer. Taking turns, like chess men making moves against the constraints of a clicking clock, the two men took the large black piece from beneath the hood and moved it to the driver's side. They had closed the match to "Check." There remained but one more move to make.
Frozen in the window above the action, Taylor once again had a clear view of the board: the players made one more move without hesitation, the driver's door opened and with a jerk the "mate" was struck. Two men, with two pieces from the car, turned and began to walk from Taylor's eyes. One held the black cableless battery; the other perched a multicolored parasol with a yellow handle on his shoulder, as if to shade the newly found prize from the crisp glare of the sun.
John Taylor scrutinized the two characters walk away. Down the streets of Baton Rouge they walked like two figures out of the play "Waiting for Godot." By now the police had been summoned: 911 had been called. Yet Taylor knew that in the mix of concrete towers, alleys, parking lots, and narrow ways to nowhere, the two could disappear. Once a mere observer, John Taylor himself became a player, a tracker, a citizen. After following and parking and noting their movement, Taylor saw the fruit of his call to 911: the police cruiser with officer Jena Hedrick skirted past in the general direction of Taylor's office. Taylor immediately left the parking lot of choice observation and scampered back to his office.
Officer Jena was just pulling her cruiser to a stop. Taylor sprang from his car, told Officer Hedrick to follow him, and together they spotted the multicolored parasol moving through the sunshine along with the black battery.
And so here we are: we have John Taylor on the stand identifying, without doubt, the two men who removed a battery and an umbrella from an almost dead, if not dying, 1993 Chevrolet Blazer, a car waiting to be tendered back to its owner due to lack of payment. What we have described here in a few paragraphs, actually pilfered about ten or fifteen minutes from the clicking hands of the clock. Soon after the arrest, John Taylor, lawyer and citizen, went back to the second floor of his office and worked with a newer day.

ANALYSIS
Defendant, Alonzo L. Hayes, was charged by bill of information with simple burglary, a violation of La.R.S. 14:62.[1] He entered a plea of not guilty and waived his right to trial by jury. Following a bench trial, defendant was found guilty as charged. The trial court sentenced defendant to imprisonment at hard labor for twelve years and credited him with time served. Defendant has appealed, urging two assignments of error:
1. The evidence is insufficient to support the conviction.
*94 2. The trial court committed error when it imposed an excessive sentence and failed to comply with LSA-C.Cr.P. art. 894.1.
In brief, defendant expressly abandoned assignment of error number two.

ASSIGNMENT OF ERROR
In his sole assignment of error, defendant contends that the evidence was insufficient to convict him of the offense of simple burglary. More specifically, defendant asserts that Taylor's trial testimony shows that Taylor could not identify defendant as one of the perpetrators of the burglary. He argues that Taylor only identified defendant because he was with the person wearing a black shirt and black hat and carrying an umbrella. Defendant further argues that while Taylor relies heavily on the clothing of the other perpetrator, Taylor was unable to describe what the person carrying the battery was wearing.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged and defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See State v. Brown, 594 So.2d 372, 384 (La.App. 1st Cir.1991), writ denied, 596 So.2d 552 (La.1992).
Where the key issue is the defendant's identity as the perpetrator, rather than whether or not the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir.1984). Positive identification by only one witness may be sufficient to support the defendant's conviction. State v. Royal, 527 So.2d 1083, 1086 (La.App. 1st Cir.), writ denied, 533 So.2d 15 (La.1988).
Taylor testified that from his vantage point at the second-floor window, he had a clear unobstructed view when the perpetrators walked up to the vehicle. He testified that he could clearly see their faces and their clothing from the window. The perpetrators had on the same clothes from the time they arrived in the parking lot until they were apprehended. One was wearing a black shirt and a black hat. The other, the defendant, was wearing a short-sleeved, light colored shirt, "maybe a polo style shirt." Taylor stated that he identified the men based on their clothing and by their faces. When specifically asked if his identification of defendant was based solely on the color of defendant's clothing, Taylor answered in the negative explaining that he saw defendant's face in both the parking lot and in the back of the police car. He found the clothes helpful to him in keeping track of the perpetrators. Taylor further testified that he did not see anyone else involved in the crime and that he had "no doubt" that defendant was the individual he had observed at his office with the battery. Officer Hedrick also testified that Taylor showed no hesitation in his identification of either one of the two individuals and stated that Taylor "was positive that's who it was."
Beverly Cowart testified that she was the owner of the Blazer. She stated that she did not know the defendant and never gave him permission to use her vehicle. Neal Wilkinson testified that Cowart was his client and that he had acquired the possession of the Blazer from her on September 7, 1993, in order to effectuate a voluntary surrender of the vehicle to the company which financed Cowart's purchase of the Blazer. Wilkinson stated that he never gave defendant permission to use Cowart's vehicle.
Defendant appears to concede that the evidence of his identity would be sufficient under Jackson v. Virginia except that co-defendant Alfred Scott testified that Hayes had nothing to do with the charged crime.[2] According to Scott, he met the defendant on the street after the actual perpetrator had left him a few blocks from the crime scene. *95 Scott realized that the actual perpetrator's first name was Eric, but he did not remember his last name. Scott asked defendant if he wanted to buy the battery and asked defendant to help him carry the battery. He did not tell defendant that the battery was "hot."
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Gordon, 582 So.2d 285, 292 (La.App. 1st Cir.1991). In finding the defendant guilty of the instant offense, the trial court expressly stated that it did not believe the testimony of Scott. The credibility of the witnesses' testimony is a matter of weight of the evidence, and not its sufficiency. A determination of the weight to be given evidence is a question of fact for the trier of fact, and not subject to appellate review. State v. Marshall, 479 So.2d 598, 603 (La.App. 1st Cir.1985).
The instant offense occurred during broad daylight. Taylor viewed defendant and Scott as they approached the Blazer. Although Taylor indicated that he could not see the perpetrators "that well" while the Blazer's hood was up, his testimony reflects that his view of them as they approached the parking lot and during the crime was otherwise unobstructed. Taylor watched the perpetrators during the commission of the offense, as they left the crime scene and while he followed them in his vehicle. Defendant and Scott were apprehended and positively identified by Taylor within minutes of the offense. His testimony was clear that his identification of the defendant was not based on clothing alone.
Considering all the circumstances present in this case, we are convinced that the evidence presented herein negated any reasonable probability of Taylor's misidentification of defendant and that, viewing all the evidence in the light most favorable to the state, the state proved beyond a reasonable doubt all of the elements of simple burglary and defendant's identity as perpetrator of the offense. Defendant's assignment lacks merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The bill of information jointly charged defendant and co-perpetrator Alfred L. Scott with the instant offense. During his testimony as a defense witness at the trial of the defendant, Scott stated that he entered a plea of guilty in connection with the charged offense. Scott is not a party to the instant appeal.
[2] In conjunction with Scott's testimony, defendant introduced into evidence Defense Exhibit D-1, a handwritten note dated January 21, 1994, which Scott stated he had given to defendant on that date. Scott began his testimony saying he would relate to the court the substance of D-1. Indeed, the content of D-1 is consistent with Scott's trial testimony.